IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| LOCATION SERVICES IP, LLC, | |
| Plaintiff, | |
| v. | Case No.: 2:15-cv-01214 |
| LYFT, INC., | |
| Defendant. | JURY TRIAL DEMANDED |

**DEFENDANT LYFT'S MOTION TO
TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

    A.  LSI And Its Asserted Claims ................................................................. 2

    B.  Lyft And Its Business Records And Employees Are Located In The Northern District Of California ............................................................... 3

    C.  Potential Third-Party Witnesses And Relevant Evidence Are Principally Located In California, And None Are In This District. ......................... 5

III.  LEGAL STANDARD .......................................................................................... 6

IV.  ARGUMENT ....................................................................................................... 7

    A.  LSI Could Have Brought Suit In The Northern District Of California. ................. 7

    B.  The Private And Public Interest Factors Weigh In Favor Of Transfer To The Northern District Of California. .................................................... 8

        1.  The superior access to documents and other sources of proof in the Northern District of California strongly supports transfer ......................... 8

        2.  The availability of compulsory process in the Northern District of California favors transfer. ....................................................... 9

        3.  The Northern District of California is more convenient for witnesses. ........................................................................... 10

        4.  The local interest in having localized issues decided at home favors the Northern District of California. ...................................... 13

        5.  All factors directed at the public interest are neutral. ................. 14

    C.  This Court Owes No Deference To LSI's Choice Of Venue ............................ 15

V.  CONCLUSION .................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
No. 2:10-cv-448-DF, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012)..........................................13

*In re Acer Am. Corp.*,
626 F.3d 1252 (Fed. Cir. 2010)..........................................................................................9

*In re Apple Inc.*,
374 F. App'x 997 (Fed. Cir. 2010) ......................................................................................13

*In re Apple, Inc.*,
581 F. App'x 886 (Fed. Cir. 2014) ......................................................................................12

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009).................................................................................6, 8, 10

*In re Hoffmann-LaRoche, Inc.*,
587 F.3d 1333 (Fed. Cir. 2007)......................................................................................9, 13

*In re Horseshoe Entm't*,
337 F.3d 429 (5th Cir. 2003) ...............................................................................................7

*In re Microsoft Corp.*,
630 F.3d 1361 (Fed. Cir. 2011).......................................................................................9, 15

*J. McIntyre Mach., Ltd. v. Nicastro*,
131 S. Ct. 2780 (2011)..........................................................................................................7

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009).......................................................................................7, 15

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014).........................................................................................7, 8

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)..........................................................................6, 7, 11, 15

*In re Volkswagon AG (Volkswagon I)*,
371 F.3d 201 (5th Cir. 2004) .............................................................................6, 7, 14

*In re Volkswagon of Am., Inc. (Volkswagon II)*,
545 F.3d 304 (5th Cir. 2008) (en banc) ...................................................6, 7, 8, 14

*In re WMA Gaming, Inc.*,
  564 F. App'x 579 (Fed. Cir. 2014) ...................................................................12

*Miller & Lux, Inc. v. East Side Canal & Irrigation Co.*,
  211 U.S. 293 (1908)........................................................................................15

*Mohamen v. Mazda Motor Corp.*,
  90 F. Supp. 2d 757 (E.D. Tex. 2000).................................................................7

*Network Prot. Scis. LLC v. Juniper Networks, Inc.*,
  No. 2:10-cv-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012).....................13

*NovelPoint Learning LLC v. LeapFrog Enters., Inc.*,
  No. 6:10-cv-229, 2010 WL 5068146 (E.D. Tex Dec. 6, 2010) .............................9

*PersonalWeb v. Google*,
  No. 6:12-cv-00660 ..........................................................................................10

*Plant Equip. v. Intrado Inc.*,
  No. 2-09-cv-395-TJW, 2010 WL 2465358 (E.D. Tex. June 16, 2010)..................8

*Parthenon Unified Memory Architecture LLC v. HTC Corp. & HTC Am., Inc.*,
  No. 2:14-CV-00690, 2015 WL 4698460 (E.D. Tex. Aug. 6, 2015)......................10

*Regent Markets Group, Ltd. V. IG Markets, Inc.*,
  No. 2:10-cv-42, 2011 WL 1135123 (E.D. Tex. Mar. 25, 2011)............................9

*Software Rights Archive, LLC v. Google, Inc.*,
  No. 2:07-cv-511, 2010 WL 2950351 (E.D. Tex. July 22, 2010)..........................13

*Transunion Intelligence L.L.C. v. Search Am., Inc.*,
  No. 2:10-cv-130, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011) ...........................14

*In re Zimmer Holdings, Inc.*,
  609 F.3d 1378, 1381 (Fed. Cir. 2010)...............................................................13

**Statutes**

28 U.S.C.
  §1391(c)(2) .....................................................................................................8
  § 1400(b).........................................................................................................7
  § 1404(a) ................................................................................................ *passim*

Fed. R. Civ. P.
  45(c)(1)(A)......................................................................................................10
  45(c)(1)(B)(ii) .................................................................................................10

Defendant Lyft, Inc. ("Lyft") respectfully moves this Court pursuant to 28 U.S.C. § 1404(a) for transfer of this action to the Northern District of California.

## I.     INTRODUCTION

This action has virtually no connection to the Eastern District of Texas.  Plaintiff Location Services IP, LLC ("LSI") was formed mere weeks before acquiring the patents-in-suit. Its sole operations apparently consist of litigating and licensing the patents-in-suit.  Its entire "presence" in this District consists of a single office in a "virtual office" location in Plano, Texas and even that was manufactured *after* LSI began its litigation campaign in this District; when LSI filed its first case in this district against Yahoo!, Inc., it was located in Dallas, Texas—in the Northern District of Texas.  None of the inventors of the patents-in-suit, the counsel responsible for prosecution of those patents, or the prior owners of the patents-in-suit live or work in this District.

Whereas this District has no substantive connection to this case whatsoever, the Northern District of California is the locus of the operative facts alleged against Lyft.  Lyft's witnesses and any relevant documentary evidence within Lyft's possession are located in or around Lyft's principal place of business in San Francisco, California.  Two of the four inventors of the patents-in-suit, and four out of five of the patents' prosecuting attorneys, live and/or work in California, and none are located in the Eastern District.  Likewise, the two entities that owned the patents-in-suit before LSI and who were responsible for commercialization and/or licensing of the patented inventions were both based in California.  Moreover, the Northern District of California is a far more convenient forum for non-party witnesses, such as Lyft's third-party mapping and geolocation services provider Google Inc.

Finally, continued maintenance of this action in this district would not serve the interests of justice.  LSI was formed in Texas (albeit outside this District) for the sole purpose of

1

manufacturing a basis for venue where none exists.  LSI's Texas presence is thus ephemeral, and

entitled to no weight in the transfer analysis.  By contrast, the Northern District has a strong local

interest in having a dispute regarding a local company, relying on witnesses and documents

almost exclusively from within the Northern District, decided in that locale.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

### A.      LSI And Its Asserted Claims

LSI filed its complaint ("Complaint") against Lyft on July 1, 2015 asserting claims for

infringement of United States Patent Nos. 6,202,023 (the "'023 Patent"), 8,935,220 (the "'220

Patent") and 6,356,834 (the "'834 Patent") (collectively, the "Patents-in-Suit").  In its Complaint,

LSI alleges that Lyft is infringing one or more claims of the Patents-in-Suit through the operation

of the "Lyft Mobile Application."  (Complaint, ¶¶ 13, 20, 27).  In simplified terms, and

according to LSI, Lyft purportedly infringes the Patents-in-Suit by transmitting data to and from

the Lyft Mobile Application that includes location information.  (*Id.* ¶¶ 13, 20, 27).

LSI asserts that it is a Texas company with its principal place of business at 1400 Preston

Road, Suite 475, Plano, Texas 75201.  (Complaint, ¶ 2).  That location appears to be a "virtual

office" operated by a company called Meridian Business Centers that offers a local professional

business address to companies that wish to be located there.  (Declaration of James S. Blackburn

("Blackburn Decl."), ¶ 4, Ex. 1).  And, contrary to LSI's allegations, there appears to be no

record of a company by the name of "Location Services" at this address at all.  (Declaration of

Michael J. Collins ("Collins Decl."), ¶¶ 3-4, 6-7).  Prior to its current address, LSI was located at

2555 North Pearl Street, Dallas, Texas 75201, an address within the Northern District of Texas.[1]

(Blackburn Decl. ¶¶ 12, Ex. 8).  LSI was located at its Dallas address when it filed its first action

---

[1] This address is not in fact a business address, but rather a Ritz Carlton Residences, a residential
condominium complex.  (Blackburn Decl., ¶ 5, Ex. 2).

in this district against Yahoo!, Inc. on February 6, 2015, and relocated to Plano shortly thereafter. (*Id.*, ¶ 7, Ex. 4).

LSI has no known employees in the State of Texas, and it conducts no business in Texas. (*Id.*, ¶ 8).  Counsel for Lyft has been unable to locate any evidence of LSI's business activities on the Internet or through corporate record searches, or any reference to LSI (other than an address listing and references to its litigation activities) as of September 11, 2015.  (*Id.*).  LSI is owned by Monument Patent Holdings, LLC ("Monument"), a patent-holding company located at the same "virtual" address in Plano, Texas as LSI.  (*Id.*, ¶ 6, Ex. 3).  Monument's principals are David Pridham and Matthew DelGiorno.  Mr. DelGiorno is an attorney and LSI's registered agent.  (*Id.*).  Mr. Pridham apparently is located either in Barrington, Rhode Island, or Dallas, Texas, neither of which is in the Eastern District.  (*Id.* ¶¶ 10-11, Exs. 6, 7).

LSI alleges that "[t]he Patents-in-Suit originated from Go2 [Systems, Inc.], a pioneer in location based services and mobile web technology" that was founded by Lee Hancock. (Complaint, ¶ 9).  Go2 Systems, Inc. ("Go2") was based in Irvine, California and offered products and services that allegedly practiced the inventions of the Patents-in-Suit.  Go2 ceased operations in or around November 25, 2002, at which point the Patent-in-Suit were transferred to WGRS Licensing Company, LLC ("WGRS"), a licensing entity controlled by S. Lee Hancock and also located in Irvine, California.  (Blackburn Decl., ¶ 12, Ex. 8).  LSI incorporated in Texas on March 12, 2014 and three weeks later, on April 4, 2014, it acquired the Patents-in-Suit from WGRS.  (*Id.*, ¶¶ 6, 12, Exs. 3, 8).

### B.     Lyft And Its Business Records And Employees Are Located In The Northern District Of California.

Lyft is a privately held ridesharing transportation network company incorporated under the laws of the State of Delaware with its principal place of business located at 2300 Harrison

Street, San Francisco, California 94110.  (Declaration of Michael Lodick ("Lodick Decl."), ¶ 3). Lyft develops and provides a mobile application that connects passengers who need a ride with drivers who have a car and are willing to provide a ride.  (*Id.*, ¶ 5).  Lyft's mobile application may be downloaded free-of-charge by anyone in the United States for use in any location where Lyft offers its services.  (*Id.*).

Lyft does not maintain any facilities in the Eastern District of Texas, or anywhere else in Texas, nor does it have any relevant business records or any employees in Texas or the Eastern District.  (*Id.*, ¶ 15).  Any relevant evidence within Lyft's possession is located in or easily accessible from San Francisco, California, where Lyft is headquartered and from where it directs all of its operations.  (*Id.*, ¶¶ 6, 11-14).  Lyft's San Francisco principal place of business houses hundreds of employees, including the key engineers and other personnel involved with the research, design, and development of Lyft's mobile application.  (*Id.*, ¶¶ 3, 7).  Lyft's San Francisco office is also home to all of the employees who oversee the sales, marketing, and financial aspects of its business.  (*Id.* ¶ 8).

Specifically, Lyft has identified the following individuals, each located in San Francisco, as potentially having relevant information about its accused mobile application:

- Daniel Hochman, Development Operations Engineer (San Francisco, CA)
- Michael Lodick, Senior Software Engineer (San Francisco, CA)
- Jason Rosenfeld, Principle Software Engineer (San Francisco, CA)
- Eduardo Perez, Senior iOS Engineer (San Francisco, CA)
- Alexey Zakharov, Android Engineer (San Francisco, CA)
- Jatin Chopra, Engineering Manager (San Francisco, CA)
- Vikram Naidu, Director, Financial Planning and Analysis (San Francisco, CA)
- Amit Patel, Director of Enterprise Partnerships (San Francisco, CA)
- David Rust, Senior Manager, Operations Strategy and Growth (San Francisco, CA)

(*Id.*, ¶¶ 7-8).

**C.   Potential Third-Party Witnesses And Relevant Evidence Are Principally Located In California, And None Are In This District.**

The original inventors of the Patents-in-Suit, the attorneys who prosecuted the Patents-in-Suit, and the patents' prior owners are likely to provide relevant evidence in this case.  None of them are located in the Eastern District of Texas.  Almost all of them are in California.

Two of the four named inventors of the Patents-in-Suit live and/or work in California:

- S. Lee Hancock, an inventor for all three Patents-in-Suit, resides in Newport Beach, California, and currently manages two companies located in Irvine, California. (Blackburn Decl., ¶ 14, Ex. 10).

- Jordan Hastings, an inventor for the '220 Patent, currently works at the University of Southern California in Los Angeles, California.  (*Id.*, ¶ 15, Ex. 11).

Four of the attorneys that prosecuted the Patents-at Issue are in California:

- Stephen C. Beuerle, one of the prosecuting attorneys for at least the '834 Patent, currently works for the law firm Procopio, Cory, Hargreaves & Savitch LLP in San Diego, California.  (*Id.*, ¶¶ 18-19, Exs. 14, 15).

- William A. English, one of the prosecuting attorneys for at least the '220 Patent, currently works for the Vista IP Law Group LLP in Fullerton, California. (*Id.*, ¶ 20, Ex. 16).

- Tarek N. Fahmi, one of the prosecuting attorneys for at least the '220 Patent, is currently a Principal at Ascenda Law Group PC and works in that firm's office in San Jose, California.  (*Id.*, ¶¶ 21-22, Exs. 17-18).

- Farshad Farjami, one of the prosecuting attorneys for at least the '220 Patent, currently works at Farjami & Farjami LLP, which maintains offices in Mission Viejo, California, and San Jose, California.  (*Id.*, ¶¶ 23-24, Exs. 19, 20).

The only other foreseeable third-party witnesses are Peter H. Dana, an inventor for the '023 and '834 Patents; Scott D. Morrison, an inventor for the '023 and '220 Patents; and Robert C. Laurenson, one of the attorneys who participated in the prosecution of the '023 Patent.  Mr. Dana currently resides in Georgetown, Texas, which is not located within the Eastern District of Texas.  Mr. Laurenson is currently employed by Intellectual Ventures in Bellevue, Washington. Mr. Morrison appears to currently reside in Montana.  (*Id.*, ¶¶ 16-17, 25-26, Ex. 12, 13, 21, 22).

5

Finally, Lyft is also likely to rely on Google Inc. ("Google") for information pertinent to its defense, since Lyft's mobile application use third-party location data provided by Google through its Google Maps service.  (Lodick Decl., ¶ 16).  Google has its headquarters and principal place of business in Mountain View, California, which is located in the Northern District of California.  (*Id.*).

## III.  LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  In patent cases, the laws of the regional circuit in which the case was originally brought governs the transfer analysis.  *In re Genentech, Inc.*, 566 F.3d 1338, 1341-42 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

Courts in the Fifth Circuit apply a two-part test when determining whether transfer is appropriate.  First, the movant(s) must show that the case could have been brought in the proposed transferee district.  *In re Volkswagon AG (Volkswagon I)*, 371 F.3d 201, 203 (5th Cir. 2004).  If so, the court then proceeds to weigh the relative convenience of the transferee district and the original district, based on a number of private and public interest factors.  *Id.*  The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *In re Volkswagon of Am., Inc. (Volkswagon II)*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (citations omitted).  The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interest decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of

unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* at 315 (citations omitted).

Under Fifth Circuit law, transfer is appropriate where "nothing favors the transferor forum, whereas several factors favor the transferee forum." *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014) (citing *Volkswagon II*, 545 F.3d at 315). When applying the law from this circuit, the Federal Circuit has clarified that "[t]he analysis may not show that the transferee forum is far more convenient. But that is not what is required. With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is 'clearly more convenient.'" *Id.* "Typically, the most important of the above factors is whether substantial inconvenience will be visited upon key fact witnesses should the court deny transfer." *Mohamen v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 774 (E.D. Tex. 2000). "The Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer . . . ." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009); *TS Tech*, 551 F.3d at 1320.

In this action, there are no factors favoring the Eastern District of Texas as a forum, whereas many factors demonstrate that the Northern District of California is far more convenient. Thus, this action should be transferred to the Northern District of California.

## IV.     ARGUMENT

### A.     LSI Could Have Brought Suit In The Northern District Of California.

As a threshold matter, Section 1404(a) requires that the action could have been filed in the proposed transferee district. *Volkswagon I*, 371 F.3d at 203 (5th Cir. 2004); *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). Because Lyft is headquartered in the Northern District of California and has its principal place of business there, the Northern District of California has personal jurisdiction over Lyft and venue is proper there. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787 (2011); 28 U.S.C. § 1400(b) (providing that "any civil

action for patent infringement may be brought in the judicial district where the defendant

resides"); 28 U.S.C. §1391(c)(2) (providing that companies "reside, if a defendant, in any

judicial district in which such defendant is subject to the court's personal jurisdiction").

**B.     The Private And Public Interest Factors Weigh In Favor Of Transfer To The Northern District Of California.**

In analyzing transfer motions, courts weigh the private and public interest factors to

determine whether the transferee venue is "clearly more convenient" than the original venue in

which the plaintiff filed suit.  *Volkswagon II*, 545 F.3d at 315; *In re Genentech, Inc.*, 566 F.3d at

1342; *Toyota*, 747 F.3d at 1341.  The public and private factors all favor transfer to the Northern

District of California.

1.     The superior access to documents and other sources of proof in the Northern District of California strongly supports transfer.

The location of the majority of evidence in and near San Francisco weighs in favor of

transfer.  As this district recognizes, "[e]ven in the age of electronic discovery, considerations of

physical evidence remain meaningful in a § 1404(a) analysis."  *Plant Equip. v. Intrado Inc.*,

No. 2-09-cv-395-TJW, 2010 WL 2465358, at *3 (E.D. Tex. June 16, 2010); *accord Volkswagon

II*, 545 F.3d at 316 (noting that technological advancements "[do] not render this factor

superfluous").  In patent cases, "the bulk of the relevant evidence usually comes from the

accused infringer…"  *In re Genentech*, 566 F.3d at 1345.  As a result, "the place where

defendant's documents are kept weighs in favor of transfer to that location."  *Id.*  Lyft's relevant

documents are in San Francisco, California.  (Lodick Decl., ¶¶ 11-14).

In contrast, whatever documents LSI may possess are not entitled to any weight in this

analysis.  LSI was formed in Texas less than a year before it began filing lawsuits in this District

alleging infringement of the Patents-in-Suit, and apparently has conducted no business activities

other than litigation since its formation.  (Blackburn Decl., ¶¶ 4, 8); (Collins Decl., ¶¶ 3-7).

Accordingly, whatever documents it has in the Eastern District of Texas must have been

transferred there before the filing of LSI's patent infringement actions in anticipation of

litigation, and, therefore, are not considered to be "Texas" documents for purpose of a transfer

analysis.  *In re Hoffmann-LaRoche, Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2007) (documents

transferred in anticipation of litigation are not entitled to weight in a transfer analysis).

Moreover, this court has previously noted that any ease of access to the plaintiff's

documents is of little import when the plaintiff is an "ephemeral entity."  *See NovelPoint*

*Learning LLC v. LeapFrog Enters., Inc.*, No. 6:10-cv-229, 2010 WL 5068146, at *4 (E.D. Tex

Dec. 6, 2010) ("[The] weight given to the location of [the plaintiff's] documents is determined

by whether [the plaintiff is] an 'ephemeral entity.'"); *see also In re Microsoft Corp.*, 630 F.3d

1361, 1365 (Fed. Cir. 2011) (granting transfer because the plaintiff had no employees in Texas,

even though the plaintiff had incorporated in Texas, had a principal place of business in Texas,

and kept documents there).  LSI's presence in the Eastern District of Texas is similarly

"ephemeral" and manufactured solely for the purpose of establishing venue during litigation.

Accordingly, any LSI documentation that may be in Texas does not alter the transfer analysis.

2.     The availability of compulsory process in the Northern District of
California favors transfer.

"The venue's ability to compel testimony through subpoena power is . . . an important

factor," and even "invaluable."  *In re Acer Am. Corp.*, 626 F.3d 1252, 1255 (Fed. Cir. 2010).

This factor most favors transfer when the transferee venue has subpoena power over important

third-party witnesses for both depositions and trial.  *Hoffman-La Roche*, 587 F.3d at 1338; *see*

*also Regent Markets Group, Ltd. V. IG Markets, Inc.*, No. 2:10-cv-42, 2011 WL 1135123, at *3

(E.D. Tex. Mar. 25, 2011) (noting that the availability of compulsory process "will weigh more

heavily in favor of transfer when more non-party witnesses reside within the transferee venue.").

9

Here Lyft has identified two attorneys that work within the Northern District of California who participated in the prosecution of the Patents-in-Suit and are therefore likely to have information relevant to this case: Tarek N. Fahmi of Ascenda Law Group PC and Farshad Farjami of Farjami & Farjami LLP, both having offices in San Jose, California, within 100 miles of the district court in San Francisco.  In addition, Lyft has identified Google employees as potential third-party witnesses, all of whom are likely in the Northern District of California and subject to that court's subpoena power.  *See* Fed. R. Civ. P. 45(c)(1)(A).

Further, Lyft has identified multiple other witnesses—including most of the inventors and prosecuting attorneys for the Patents-in-Suit—located elsewhere in California.  These witnesses, who are critical to Lyft's defense and can be expected to testify at trial, are subject to the Northern District of California's subpoena power.  *See* Fed. R. Civ. P. 45(c)(1)(B)(ii) (subpoena may command attendance at trial "within the state where the person resides" if the person would not "incur substantial expense."); *Parthenon Unified Memory Architecture LLC v. HTC Corp. & HTC Am., Inc.*, No. 2:14-CV-00690, 2015 WL 4698460, at *5 (E.D. Tex. Aug. 6, 2015) (finding that the Southern District of California has subpoena power over inventors residing in Northern California).  As a result, this factor favors transfer.  *See, e.g.*, *PersonalWeb v. Google*, No. 6:12-cv-00660, Dk. No. 101 at 22 (E.D. Tex. Feb. 12, 2014) (finding that this factor favors transfer when "there are no known third-party witnesses in this District and several potential third-party witnesses in the Northern District of California").

3.      The Northern District of California is more convenient for witnesses.

Transfer to the Northern District of California is warranted because it is a more convenient forum for nonparty and party witnesses.  The convenience of witnesses and the costs associated with their attendance is an "important factor" in the transfer analysis.  *In re*

10

*Genentech*, 566 F.3d at 1343.  *See also TS Tech*, 551 F.3d at 1320 (additional distance means additional travel time and expense).  As a result, the Fifth Circuit has adopted a "100-mile" rule, pursuant to which "when the distance between an existing venue for trial . . . and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Id.* (internal quotation omitted).

All of Lyft's witnesses are located in Northern California.  No matter the issue—the design and development of the accused products, or the marketing and sales of those products—each of the relevant Lyft party witnesses is located in Northern California; none are in Texas or in this district.  *See supra* at Section II.B.

Likewise, the Northern District of California is more convenient for nonparty witnesses.  Specifically, two of the four inventors—S. Lee Hancock and Jordan Hastings—reside or work in Southern California, and four of the five prosecuting attorneys are also located in California, with the fifth is in Washington state.  *See supra* at Section II.C. Each of these witnesses is significantly closer to the Northern District of California than they are to Marshall, Texas.  In addition, Lyft may seek testimony from employees at nonparty Google, which provides the geolocation data used by Lyft's mobile applications.  Google employees may also have relevant testimony concerning the functionality of the search queries in Lyft's mobile application, as those queries rely on data obtained through Google's Google Places application programming interface.  (Lodick Decl., ¶ 16).  Such witnesses likely are located in Mountain View, California in the Northern District, where Google maintains its principal business operations.  (*Id.*).

Not only is San Francisco geographically closer than Marshall for these witnesses, but travel to San Francisco is much easier than travel to Marshall.  Numerous daily flights are available between San Francisco, Los Angeles and Seattle, whereas no nonstop flights are

available to Marshall from any of these cities.  (Blackburn Decl., ¶¶ 27-29, Exs. 23-25).  Thus,

witnesses would need to make multiple flights and/or travel several hours by car to reach this

District.

In contrast, the only potential LSI witness located in Texas is Peter H. Dana, an inventor

for the '023 and '834 Patents.  However, Mr. Dana resides in Georgetown, Texas, outside of the

Eastern District of Texas.[2]  (Blackburn Decl., ¶ 16).

Without any foreseeable witnesses located in the Eastern District of Texas and numerous

potential witnesses in the Northern District of California, or elsewhere in California, this factor

weighs heavily, and nearly conclusively, in favor of transfer.  *See In re Apple, Inc.*, 581 F. App'x

886, 886 (Fed. Cir. 2014) (holding that the district court erred in denying a motion to transfer

where "Apple identified at least eight prospective party witnesses in the transferee venue with

relevant material information, while [plaintiff] failed to identify a single prospective witness in

the Eastern District of Texas").  *See also In re WMA Gaming, Inc.*, 564 F. App'x 579, 581 (Fed.

Cir. 2014) (vacating the district court's order denying transfer upon a finding that the significant

incurred expenses and lost productivity of defendant's employees weighed strongly in favor of

transfer).

---

[2] Notably, even despite the relative geographic proximity of Georgetown, Texas, to Marshall, Texas, an online search reveals that travel between those two cities is far from convenient.  There appear to be no direct flights from Austin-Bergstrom International Airport—the closest major airport to Georgetown, Texas—to any airport within the Eastern District of Texas, or to Shreveport Regional Airport, the closest major airport to Marshall, Texas.  Consequently, any air travel from Georgetown to Marshall would require at least one layover in another airport, for a total trip of at least three hours.  Road travel is even less convenient, as driving to Marshall from Georgetown would take approximately four-and-a-half hours by car.  In contrast, there are many nonstop flights per day traveling between Austin and San Francisco International Airport, most lasting approximately three hours and forty-five minutes.  Accordingly, it is arguable that it would be easier for Mr. Dana to attend a deposition, hearing, or trial and the Northern District of California, as compared to this District.  (Blackburn Decl., ¶ 30, Ex. 26).

4.   The local interest in having localized issues decided at home favors the
Northern District of California.

The Northern District of California has a strong local interest, since it is where Lyft is

headquartered and where the accused product was designed and developed.  *See Software Rights*

*Archive, LLC v. Google, Inc.*, No. 2:07-cv-511, 2010 WL 2950351, at *5 (E.D. Tex. July 22,

2010) (granting defendants' motion to transfer, in part, because Northern California had a strong

local interest in the patent infringement suit, since all of the defendants were headquartered

there).  Northern California's local interest in these cases is even stronger since it implicates

numerous Lyft employees, all of whom reside and work in that district.  *See Hoffman-La Roche*,

587 F.3d at 1336 (noting that the transferee venue's local interest in the case was strong because

"the cause of action calls into question the work and reputation of several individuals residing in

or near that district and who presumably conduct business in that community").

In contrast, the Eastern District of Texas has very little interest in this litigation, since LSI

has no real presence in this district, and no known witnesses reside here.  The Federal Circuit has

held time and time again that establishing a principal place of business in a district for the sole

purpose of seeking venue does not give rise to a local interest.  *In re Zimmer Holdings, Inc.*, 609

F.3d 1378, 1381 (Fed. Cir. 2010); *see also In re Apple Inc.*, 374 F. App'x 997, 999 (Fed. Cir.

2010) (holding that plaintiff's status as a Texas corporation was not entitled to significant

weight, as its presence in Texas appeared to be "both recent and ephemeral"); *see also Network*

*Prot. Scis. LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224-JRG, 2012 WL 194382, at *7 (E.D.

Tex. Jan. 23, 2012) (finding that "small and fairly recent operations in Texas" did not outweigh

the fact that the defendants "collectively employ thousands of people residing in California");

*accord EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 2:10-cv-448-DF, 2012 WL

122562, at *5 (E.D. Tex. Jan. 9, 2012).

13

"Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."  *Volkswagon I*, 371 F.3d at 206 (citation omitted). Where a transferor district's interests "could apply virtually to any judicial district or division in the United States," such as in the case of nationwide sale or distribution of the accused product, those interests are disregarded in favor of particularized local interests in the transferee district. *Volkswagon II*, 545 F.3d at 318.  Here, any interests that the Eastern District of Texas might have in resolving these disputes would apply to any judicial district in the country.  And, unlike the Northern District of California, this District has no meaningful ties to any party in this litigation. Litigating this case here would waste this Court's limited resources, which should be preserved for disputes with a genuine connection to this District.  As Northern California has substantial local interest in resolving LSI's action against Lyft, this factor supports transfer.

5.     <u>All factors directed at the public interest are neutral</u>.

At this early stage of litigation, Lyft is unaware of any practical problems that might arise if this case were transferred to the Northern District of California.  *See Transunion Intelligence L.L.C. v. Search Am., Inc.*, No. 2:10-cv-130, 2011 WL 1327038, at *5 (E.D. Tex. Apr. 5, 2011). The Court has not yet issued a docket control order, and discovery has not yet begun.  All other public interest factors—administrative difficulties flowing from court congestion, familiarity of the forum with the governing law, and avoidance of unnecessary conflicts of laws—are also neutral.  The Eastern District of Texas and the Northern District of California offer comparable litigation timelines, both districts are very familiar with patent law, and there appears to be no unique conflict-of-law issues.  (Blackburn Decl., ¶ 31, Ex. 27).  Therefore, the public interest factors cannot change the outcome of the analysis under the private interest factors, which as indicated above, weigh heavily in favor of transfer to the Northern District of California.

### C.    This Court Owes No Deference To LSI's Choice Of Venue.

As the Federal Circuit has explained, the Fifth Circuit does not give any special weight to the plaintiff's choice of venue when ruling on a defendant's motion to transfer. *See Nintendo*, 589 F.3d at 1200.  Rather, the plaintiff's choice of venue is properly addressed within the multi-factor test that weighs the relevant convenience of the transferor and transferee venues. *See TS Tech*, 551 F.3d at 1320.  As explained above, the Northern District of California is "clearly [the] more convenient venue." *Id.*  Therefore, this Court need not give any deference to LSI's decision to bring suit here.

As discussed *supra* at Section II.A, LSI's only connection to the Eastern District of Texas is ephemeral and was undoubtedly "made in anticipation of litigation and for the likely purpose of making that forum appear convenient." *Microsoft*, 630 F.3d at 1365 ("The only added wrinkle is that [the plaintiff] took the extra step of incorporating under the laws of Texas sixteen days before filing suit.  But, that effort is no more meaningful, and no less in anticipation of litigation, than the other ones we reject.").  Therefore, any argument that those litigation-based connections justify deference to LSI's choice of venue "rests on a fallacious assumption." *Id.* at 1364 (citing *Miller & Lux, Inc. v. East Side Canal & Irrigation Co.*, 211 U.S. 293 (1908)).

## V.    CONCLUSION

For the foregoing reasons, Lyft respectfully requests that the Court grant this motion to

transfer venue to the Northern District of California.


Dated: September 11, 2015                     Respectfully submitted,

                                              ARNOLD & PORTER LLP

                                              By:  */s/ James S. Blackburn (w/permission by Allen*
                                              *F. Gardner)*
                                              James S. Blackburn
                                              777 South Figueroa Street
                                              Los Angeles, CA 90017
                                              Telephone: (213) 243-4118
                                              E-Mail:  james.blackburn@aporter.com

                                              Allen F. Gardner
                                              State Bar No. 24043679
                                              allengardner@potterminton.com
                                              POTTER MINTON, P.C.
                                              110 N. College Ave., Suite 500
                                              Tyler, Texas 75702
                                              Tel: (903) 597-8311
                                              Fax: (903) 593-0846

                                              **ATTORNEYS FOR DEFENDANT**
                                              Lyft, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) on September 11, 2015.


*/s/ Allen F. Gardner*
Allen F. Gardner

## **CERTIFICATE OF CONFERENCE**

I hereby certify that I conferred with John Edmonds and Steve Schlather, Counsel for Plaintiff Location Services IP, LLC, regarding the matters set forth in this motion and have complied with the meet and confer requirement in Local Rule CV-7(h).  The parties disagree over whether transfer to the Northern District of California is appropriate, and Mr. Edmonds and Mr. Schlather have indicated that this motion is opposed.  At this time we feel that we have reached an impasse and request the Court to resolve.


*/s/James S. Blackburn*
James Blackburn

18